Michael D. Leatherwood
DOC No. 595058
3200 S. Kings Highway
Cushing, OK  74023

**FILED**

JAN 17 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| MICHAEL D. LEATHERWOOD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JOE M. ALLBAUGH, DIRECTOR OF OKLAHOMA DEPARTMENT OF CORRECTIONS; LAURA PITMAN, ASSISTANT DIRECTOR, OKLAHOMA DEPARTMENT OF CORRECTIONS; GREG WILLIAMS, REGIONAL DIRECTOR, OKLAHOMA DEPARTMENT OF CORRECTIONS; MARK KNUTSON, DIRECTOR'S DESIGNEE, OKLAHOMA DEPARTMENT OF CORRECTIONS; STEPHANIE ADAMS, OKLAHOMA DEPARTMENT OF CORRECTIONS; RAYMOND BYRD, WARDEN, CIMARRON CORRECTIONAL FACILITY; WARDEN ENSEY, ASSISTANT WARDEN, CIMARRON CORRECTIONAL FACILITY; CHIEF COX, SECURITY CHIEF, CIMARRON CORRECTIONAL FACILITY; CHIEF HILLIGOS, CHIEF OF UNIT MANAGERS, CIMARRON CORRECTIONAL FACILITY,<br><br>　　　　Defendants. | CASE NO.  CIV-19-54-SLP<br><br>CIVIL RIGHTS COMPLAINT |

## PARTIES

1.　　Plaintiff, Michael D. Leatherwood, filing *pro se*, is a citizen of Oklahoma who presently resides at the Cimarron Correctional Facility, 3200 S. Kings Highway, Cushing, Oklahoma, 74023.

1

2. Defendant, Joe M. Allbaugh, Director, Oklahoma Department of Corrections, is a citizen of Oklahoma or resides a significant portion of time in Oklahoma. Defendant is sued in his individual and official capacity.

3. Defendant, Laura Pitman, Assistant Director, Oklahoma Department of Corrections, is a citizen of Oklahoma. Defendant is sued in her individual and official capacity.

4. Defendant, Greg Williams, Regional Director, Oklahoma Department of Corrections, is a citizen of Oklahoma. Defendant is sued in his individual and official capacity.

5. Defendant, Mark Knutson, Director's Designee, Oklahoma Department of Corrections, is a citizen of Oklahoma. Defendant is sued in his individual and official capacity.

6. Defendant, Stephanie Adams, Contract Monitor, Oklahoma Department of Corrections, is a citizen of Oklahoma. Defendant is sued in her individual and official capacity.

7. Defendant Raymond Byrd, Warden, Cimarron Correctional Facility, is a citizen of Oklahoma or resides a significant portion of time in Oklahoma. Defendant is sued in his individual and official capacity.

8. Defendant, Ensey, Assistant Warden, Cimarron Correctional Facility, is a citizen of Oklahoma. Defendant is sued in his individual and official capacity.

9. Defendant Cox, Chief of Security, Cimarron Correctional Facility, is a citizen of Oklahoma. Defendant is sued in his individual capacity.

10. Defendant, Hilligos, Chief of Unit Managers, Cimarron Correctional Facility, is a citizen of Oklahoma. Defendant is sued in his individual and official capacity.

## JURISDICTION

11.     At all times throughout the course of the actions resulting in this Complaint each named defendant was acting under color of state law, and continues to act under color of state law, working at the Oklahoma Department of Corrections or the Cimarron Correctional Facility, or both, as an employee, an independent contractor, or an employee of an independent contractor. The Oklahoma Department of Corrections is a state agency. The Cimarron Correctional Facility is a private, *for-profit*, corporation operating under contract with the Oklahoma Department of Corrections. Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections and has been housed at Cimarron Correctional Facility pursuant to contract beginning July 31, 2017.

## NATURE OF CASE

12.     Plaintiff is a medium security inmate incarcerated at Cimarron Correctional Facility ("CCF") subject to a conviction and sentence in Oklahoma state court. CCF is a privately owned and operated *for-profit* prison, owned by CoreCivic, Inc., operating under contract with the Oklahoma Department of Corrections ("ODOC") to provide incarceration services for medium security inmates.[1]

When a criminal defendant is convicted in Oklahoma state court and sentenced to incarceration he is remanded to the custody of the ODOC to serve the sentence. The ODOC classifies the inmate pursuant to state statute. The classification of medium security is created by the statute. Inmates are assigned for housing at various state owned and operated prisons and privately owned and operated prisons.

Defendants conspired to create, and have created, a policy, practice and/or custom

---

1   CoreCivic Inc. was formerly known as Corrections Corporation of America, Inc.

("procedure") of consolidating non-compliant, disruptive and/or dangerous medium security inmates ("treacherous inmates") at CCF.[2] Medium security inmates housed at ODOC operated facilities are systematically and intentionally laterally transferred to CCF as a result of the inmates' non-compliant, disruptive and/or dangerous conduct or for receiving a misconduct. As a result of the procedure CCF has a *significantly* greater number of treacherous inmates than medium security prisons operated by the ODOC. The consolidation of this class of inmates diminishes the overall safety and environment at CCF and results in *significantly* more incidents of intimidation, extortion, assaults, and mass-violence and places Plaintiff at great risks of physical harm or death. Defendants are deliberately indifferent to the significant dangers to Plaintiff as a result of the consolidation of this class of inmates at CCF. Medium security general population inmates housed at CCF are rarely, if ever, transferred from CCF to an ODOC operated medium security prison.[3]

The cumulative effect of the procedure of consolidating treacherous inmates at CCF creates a climate which is significantly different, and more dangerous, than that experienced by medium security general population inmates housed at ODOC operated prisons. The increased dangers, and the different treatment, causes Plaintiff constant, and significant stress, anxiety, physical pain and suffering and psychological trauma and places him at *significantly* greater risk of harm or death.[4]

---

2  Plaintiff's Complaint is not related in anyway to the crime classification the inmates are convicted of. Rather the Complaint is specific to the non-compliant, disruptive and dangerous conduct of the inmates while incarcerated.

3  When inmates at CCF become eligible for lower security they are transferred to minimum security prisons. If inmates at CCF get in significant trouble they may be transferred to a higher security prison or occasionaly laterally transferred to another private prison. But it is exceptionally rare that any medium security inmate is laterally transferred from CCF to an ODOC operated prison.

4  It is a known fact that CCF has had more inmate homicides over the past 5-years on a per capita basis than any medium security prison operated by the Oklahoma Department of Corrections.

Defendants are fully and undeniably aware of the serious security risks created by the consolidation of these treacherous inmates as evidenced by the fact that CCF operates in a significantly more restrictive and repressive manner than **every** other medium security prison operated by ODOC or contracted by ODOC. In fact CCF operates in a more restrictive and repressive manner than the other medium security prison owned and operated by CoreCivic operating in Oklahoma.[5] The best factual evidence that Defendants are fully aware of the extreme dangers created by consolidating the worst inmates at CCF is that CCF is the **only** medium security prison operating within the ODOC that locks general population inmates in/out of their assigned cell and does not allow inmates to control access to enter/exit their cells. Defendants refer to this policy generally as **"lock-in/lock-out." No** other medium security prison operating in Oklahoma uses a "lock-in/lock-out" policy for general population inmates. **Every** other medium security prison in Oklahoma allows general population inmates unfettered access to enter/exit their assigned cell except during "count time" or a security "lockdown".[6] In fact several medium security prisons operated by ODOC issue "keys" to general population inmates which allow inmates to lock and unlock their cell doors. Prisons that do not issue keys simply allow the inmate to lock the cell door by closing it and have a button in the cell which inmates push and the cell door opens. The medium security prisons that do not issue keys or have a button in the cell simply leave the cell doors unlocked allowing inmates unfettered access.[7] [8] Because CCF locks Plaintiff **out** of his cell in the day-room, when

---

5  CoreCivic Inc., also operates the medium security Davis Correctional Facility contracted by ODOC in Holdenville, OK. The medium security Davis Correctional Facility operates in a significantly less restrictive manner than CCF and operates consistent with ODOC operated medium security prisons.
6  The cell doors at some medium security prisons are locked during "count time" or during a security lockdown.
7  This issue is specifically related to medium security prisons and general population inmates.
8  It is noteworthy that the day-rooms at CCF do not have restrooms or toilets available to the inmates. When

violence erupts in the day-room Plaintiff has no where to retreat for safety. General population inmates at every other medium security prison operating in Oklahoma control access to their cell and when violence erupts they are able to retreat to the safety of their cell and lock the door behind them.

On February 25, 2015, ten inmates were involved in a fight at CCF that left five with stab wounds. On June 12, 2015, thirty-three inmates were involved in a fight at CCF which resulted in eleven being sent to the hospital. On September 12, 2015, **four inmates were killed** in a large fight at CCF. In May of 2017 five CCF guards were injured in a fight with inmates. In June of 2018 the prison was placed on "lockdown" as a result of a mass inmate fight that resulted in inmates being hospitalized. On July 10, 2018, Plaintiff was in the day-room using the phone talking to his young daughter when a fight involving 12-15 inmates erupted in which inmates were badly injured. As a result of the "lock-in/lock-out" policy Plaintiff had no where to retreat for safety. Plaintiff witnesses violence on a daily basis. The undeniable cause of the violence at CCF is a direct result of the intentional concentration of the worst medium security inmates at CCF. CCF is located in Payne County, Oklahoma and Payne County District Attorney Laura Austin has stated, "[t]hat's a scary prison" and that "[m]aybe all of them are scary, but that one is a scary prison." It is a fact that CCF is the most dangerous medium security prison in Oklahoma with more inmate homicides and violent assaults than any medium security prison operated by the ODOC. This is a direct result of the intentional concentration of the worst medium security inmates at CCF.

Plaintiff is a 47-year old, non-violent, medium security inmate with no misconduct

---

inmates are locked out of their cell they do not have access to toilets. As a result the inmates use the shower stalls as "Chinese Toilets"

history whatsoever and is not affiliated with any gang, security threat group or disruptive group.[9] Yet, he is housed at CCF among the highest consolidation of treacherous inmates in any medium security prison in Oklahoma. Defendants' intentional consolidation of treacherous inmates at CCF is a violation of Plaintiff's Eighth Amendment U.S. Constitutional Rights. Defendants' intentional disparate treatment of Plaintiff due to the "lock-in/lock-out" policy versus that of medium security general population inmates housed at ODOC operated prisons is a violation of Plaintiff's Equal Protection Rights under the Fourteenth Amendment of the U.S. Constitution.

## FACTS

13. Plaintiff is classified consistent with state law as a medium security inmate and is confined to, and in the physical custody of, the named Defendants at Cimarron Correctional Facility. Plaintiff is now, and has at all times relevant to this Complaint, been classified as "general population."

14. CCF is a private *for-profit* prison operating under contract with the ODOC.

15. Plaintiff's assignment to CCF is at the discretion of Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey.

16. Defendants Byrd, Hilligos, Cox, and Ensey are officials of CCF.

17. Defendants Allbaugh, Pitman, Williams, Adams and Knutson are officials of ODOC.

18. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox,

---

9 Plaintiff has been incarcerated in the custody of the ODOC since August of 2010 and has no misconduct history whatsoever and no incidents of violence whatsoever. Plaintiff is required by state statute to serve at least 85% of his sentence.

and Ensey conspired to create, and have created, a policy, practice and/or custom of consolidating non-compliant, disruptive and/or dangerous medium security inmates at CCF. The inmate's crime of conviction is not relevant to this procedure. Rather the transfers are specifically related to the inmate's conduct during their incarceration.

19. Inmates assigned to housing at an ODOC operated medium security prison who are non-compliant, disruptive and/or dangerous, and/or receive a misconduct violation are systematically transferred *from* the State operated prison *to* CCF, by Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey.

20. The procedure of consolidating treacherous inmates at CCF creates a *significantly* more dangerous environment at CCF than that of ODOC operated medium security prisons and causes Plaintiff significant stress, anxiety, physical pain and suffering and psychological trauma and places him at *significantly* greater risk of harm or death.

21. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey are individually, and jointly, responsible for establishing, and executing the policy, practice and/or custom of transferring non-compliant, disruptive, and/or dangerous inmates *from* Oklahoma Department of Corrections operated prisons *to* CCF creates a consolidation of these treacherous inmates at CCF.

22. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey are aware of, and are deliberately indifferent to, the serious security risks created by the intentional consolidation of treacherous inmates at CCF and the stress, anxiety, pain and suffering and psychological trauma suffered by Plaintiff and the *significantly* greater risk of harm or death faced by Plaintiff.

23. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey are aware that the intentional consolidation of treacherous inmates places Plaintiff at a significantly greater risk of harm or death and are deliberately indifferent to the increased risks to Plaintiff.

24. Defendant Allbaugh conspired with defendants Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

25. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey individually, and jointly, put Plaintiff at significant risks of harm or death due to the consolidation of non-complaint, disruptive and/or dangerous medium security inmates at CCF.

26. Defendant Pitman conspired with defendants Allbaugh, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

27. Defendant Williams conspired with defendants Allbaugh, Pitman, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

28. Defendant Adams conspired with defendants Allbaugh, Pitman, Williams, Knutson, Byrd, Hilligos, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC

operated prisons *to* CCF.

29. Defendant Byrd conspired with defendants Allbaugh, Pitman, Williams, Knutson, Adams, Hilligos, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

30. Defendant Hilligos conspired with defendants Allbaugh, Pitman, Williams, Knutson, Byrd, Cox, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

31. Defendant Cox conspired with defendants Allbaugh, Pitman, Williams, Knutson, Byrd, Hilligos, and Ensey to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

32. Defendant Ensey conspired with defendants Allbaugh, Pitman, Williams, Knutson, Byrd, Hilligos, and Cox to create a policy, practice, and/or custom of transferring non-compliant, disruptive, and/or dangerous medium security inmates *from* ODOC operated prisons *to* CCF.

33. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey conspired to create, and have created, a policy, practice and/or custom of operating CCF in a manner which places Plaintiff at great risks of harm and/or death, and causes Plaintiff significant and constant stress, anxiety and psychological trauma.

34. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox,

and Ensey conspired to create, and have created, a policy, practice and/or custom of operating CCF in a more repressive and restrictive way than **every** medium security prison operating within Oklahoma by implementing the **"lock-in/lock-out"** policy.

35. Defendant Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey conspired to create, and have created, a policy, practice and/or custom of operating CCF in a manner which treats Plaintiff different than general population medium security inmates housed in ODOC operated prisons by implementing the "lock-in/lock-out" policy.

36. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey have established a policy, practice and/or custom of locking medium security general population inmates, including Plaintiff, *in* and *out* of their assigned cells subject to a policy called "lock-in/lock-out." Specifically, cell doors remain closed and locked unless a staff member is present at the door and manually unlocks the door. If an inmate, including Plaintiff, remains in the cell the door is locked and the inmate, including Plaintiff, is locked in the cell and cannot access the day-room. If the inmate, including Plaintiff, enters the day-room the cell door is locked and the cell is not accessible. CCF is the *only* medium security prison operating within the Oklahoma Department of Corrections that operates in this manner. There are no restroom facilities available in the day-room and when Plaintiff is locked out of his cell he does **not** have access to a restroom to relieve himself of body waste. As a result, inmates at CCF resort to using the shower stalls as "Chinese toilets" – they stand in the shower stall and urinate in the drain and then exit the stall tracking urine throughout the day-room.

37. When Plaintiff is in the day-room locked *out* of his cell pursuant to the "lock-in/lock-out" policy when violence breaks out he has no where to retreat for safety placing him

at significantly greater risks of harm and/or death. Inmates at DOC operated medium security prisons can retreat to their cell for safety when violence erupts.

## CLAIM FOR RELIEF

38. Each Defendant, jointly and individually, conspired to violate Plaintiff's constitutional rights, did violate Plaintiff's constitutional rights, and continue to violate Plaintiff's constitutional rights,

by creating a policy, practice and/or custom, of transferring non-compliant, disruptive and/or dangerous medium-security inmates *from* Oklahoma Department of Corrections operated prisons *to* the privately operated Cimarron Correctional Facility. The concentration of these treacherous inmates creates an infinitely more dangerous environment at Cimarron Correctional Facility than medium-security inmates housed at state operated prisons and causes Plaintiff stress, anxiety, physical pain and suffering and psychological trauma and places him at *significantly* greater risks of harm or death. Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey are aware of, and deliberately indifferent to, the increased risks which Plaintiff is exposed and the pain and suffering he experiences.

As a direct result of the increased risks resulting from the consolidation of these treacherous inmates the Defendants knowingly and intentionally operate Cimarron Correctional Facility in a significantly more restrictive and repressive manner than **every** other medium security prison operated by the ODOC or contracted by ODOC by implementing a policy of "lock-in/lock-out" resulting in Plaintiff being treated negatively different than the medium security general population inmates housed at ODOC prisons.[10] **The "lock-in/lock-out" policy**

---

10 The policy of "lock-in/lock-out" is **not** used at any other medium security prison in Oklahoma.

is factual evidence that Defendants are fully aware of the dangerous environment they have created compared to all other medium security prisons in Oklahoma.

The cumulative effect of the significantly dangerous environment and the resulting different treatment cause Plaintiff significant, constant and ongoing stress, anxiety, physical pain and suffering and psychological trauma and diminishes, disrupts and limits Plaintiff's communications with his family.

Defendants Allbaugh, Pitman, Williams, Adams, Knutson, Byrd, Hilligos, Cox, and Ensey, jointly and individually, have violated and continue to violate, Plaintiff's Eighth Amendment and Fourteenth Amendment Equal Protection Rights under the United States Constitution.

## JURY TRIAL REQUESTED

39. Plaintiff hereby requests a jury trial.

## PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

40. Plaintiff has not filed any previous lawsuit in state or federal court related to the issues raised in the instant Complaint. Plaintiff has exhausted all administrative remedies available to him related to the issues raised in the instant Complaint.

## RELIEF REQUESTED

41. Require Defendants to provide Plaintiff with Equal Protection consistent with medium-security inmates housed at Oklahoma Department of Corrections operated prisons related to access to enter/exit his assigned cell.

42. Issue a permanent injunction prohibiting the arbitrary use of the "lock-in/lock-out" policy by Defendants at Cimarron Correctional Facility or on Plaintiff.

43. Require Defendants to provide Plaintiff with Equal Protection and Eighth Amendment protection related to the intentional and systematic transfer of, and consolidation of, non-compliant, disruptive and/or dangerous medium-security inmates at CCF.

44. Issue a permanent injunction prohibiting the transfer of non-compliant, diruptive and/or dangerous medium security inmates from Oklahoma Department of Corrections operated facilities to Cimarron Correctional Facility.

45. Require Defendants to transfer Plaintiff to the Joseph Harp Correctional Facility which is a state operated prisons housing *compliant* medium security inmates and with populations more consistent with Plaintiff's status of 47-years old, being a wholly compliant inmate, with no misconduct history and no incidents of violence throughout his entire incarceration.

46. Award Plaintiff punitive damages in the amount of one thousand dollars ($1000.00) against Defendants Allbaugh, Pitman, Williams, Adams and Knutson in their individual capacity.

47. Award Plaintiff punitive damages in the amount of one thousand dollars ($1000.00) against Defendants Byrd, Hilligos, Cox, and Ensey in their individual capacity and one thousand dollars ($1000.00) in their official capacity.

48. Award Plaintiff with compensatory damages in the amount of one thousand dollars ($1000.00) against all Defendants.

### MOTION SEEKING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

49. Plaintiff is filing a Motion Seeking Temporary Restraining Order And Preliminary

Injunction simultaneous with the filing of the instant Complaint. Plaintiff sets forth in the motion that he is currently incarcerated at Cimarron Correctional Facility. Plaintiff sets forth that he is a 47-year old non-violent inmate with no misconduct history and no incidents of violence whatsoever throughout the entirety of his incarceration. Plaintiff states in the motion that the temporary restraining order and preliminary injunction is necessary to protect his Eighth and Fourteenth Amendment Constitutional Rights and that he will suffer irreparable injury, including possible death, without the restraining order and injunction issuing. Plaintiff states that he will suffer greater harm without the restraining order and injunction issuing than Defendants will suffer if the restraining order and injunction are granted. The consolidation of non-compliant, disruptive and/or dangerous medium security inmates at CCF does **not** serve any legitimate security, rehabilitative or penological interest and the restraining order and injunction will **not** disrupt the State's interest in being able to safely incarcerate inmates or safely incarcerate Plaintiff. Plaintiff points out that he has a substantial probability of prevailing on the lawsuit. Plaintiff also points out that it is in the best interest of the public to restrain Defendants from continuing to place him at an unreasonable and substantial risks of harm and/or death via the consolidation of treacherous inmates at CCF. Furthermore it is in the best interest of the public to restrict the Defendants from continuing the policy of "lock-in/lock-out."

In the motion seeking a temporary restraining order and preliminary injunction Plaintiff states that conditions of confinement violate the Eighth Amendment if they result in "serious deprivations of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). One of the basic human needs is "personal safety." Ramos v. Lamm, 639 F.2d 559, 566 (10th Cir.

1980). To state an Eighth Amendment claim for failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmers v. Brennan, 511 U.S. 825, 834 (1994). Furthermore, "the Eighth Amendment protects against **future** harm to inmates." Helling v. McKinney, 509 U.S. 25, 33 (1991) (Emphasis added). Accordingly, courts may not "deny an injunction to inmates who plainly prove an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." Id. Simply put, "a remedy for unsafe conditions need not await a tragic event." Id.; see also Ramos, at 572 (an inmate "does not need to wait until he is actually assaulted before obtaining relief").

## PRO SE LITIGANT

50. Plaintiff is filing *pro se* and is not a licensed attorney and is not educated or skilled in the law.

51. Plaintiff asks this Court to provide a liberal review of this Complaint in regards to his *pro se* status and the findings of Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) and Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L. Ed. 652 (1972).

52. This Complaint meets the requirements of Local Rule 9.2 of the Local Rules of the United States District Court For The Western District.

Respectfully submitted,

Michael D. Leatherwood
Plaintiff, Pro Se
DOC No. 595058
3200 S. Kings Highway
Cushing, OK  74023

I, Michael D. Leatherwood, state under penalty of perjury under the laws of Oklahoma that the forgoing is true and correct. Title 12, O.S. § 426; 28 U.S.C. § 1746.

_January 14, 2019_ _____
Date and Place  *Payne, Co, Okla.*    Signature